# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>HEATHER SERVANTEZ,<br><br>Defendant. | Case No. CR05-3005<br><br>REPORT AND RECOMMENDATION |

On the 4th day of April 2012, this matter came on for hearing on the First Supplemented and Substituted Petition for Warrant or Summons for Offender Under Supervision (docket number 293) filed on March 29, 2012. The Government was represented by Assistant United States Attorney John H. Lammers. Defendant Heather Servantez appeared in person and was represented by her attorney, Clemens Erdahl.

## I. RELEVANT FACTS AND PROCEEDINGS

On August 22, 2006, Defendant was sentenced to 126 months of imprisonment following her pleas of guilty to conspiracy to manufacture and distribute 50 grams or more of cocaine base and to distribute cocaine (Count 1) and possession with intent to distribute approximately 18 grams of cocaine base (Count 7). See docket number 224. Defendant was ordered to serve a five-year term of supervised release following her release from prison. The judgment and sentence were affirmed on appeal. Following several amendments to the Guidelines Manual, however, the Court reduced Defendant's prison term to 120 months on September 26, 2008. See docket number 258. After concluding that it erred in the application of the amended guidelines, however, the judgment was further amended to 101 months on December 16, 2008. See docket number 265. The

sentencing guidelines were subsequently modified regarding offenses involving crack cocaine. On October 19, 2011, Defendant's sentence was amended to "time served" as of November 1, 2011. *See* docket number 273. The duration and conditions of Defendant's supervised release remained unchanged.

Defendant's supervised release began on November 1, 2011. As a condition of her supervised release, Defendant was required to reside at a residential reentry center in Waterloo. On November 3, 2011, Defendant submitted a urine sample which subsequently tested positive for methamphetamine. When confronted with the test results on November 15, 2011, Defendant signed a document admitting the use of a controlled substance as indicated by the urinalysis report. Defendant claimed that "she took a pill that she found out after had meth in it." Defendant received a seven-day room restriction and was ordered by the court to perform 20 hours of community service.

Defendant received two additional disciplinary reports for violating the rules at the halfway house. On November 12, 2011, Defendant signed out of the facility to seek medical attention at Allen Hospital. Defendant called the halfway house and reported that she had arrived at the hospital. When a residential officer subsequently attempted to verify Defendant's attendance, however, he was advised that the hospital had no record of Defendant ever appearing. Defendant claims that when she arrived at the emergency room, she was told by the receptionist to sit in the waiting room. According to Defendant, she subsequently left the hospital without being seen. Defendant received three days of room restriction at the halfway house for being out of place of assignment.

On January 29, 2012, Defendant signed out of the halfway house to attend church. When she returned, Defendant produced an attendance form purportedly signed by the pastor in black ink. The residential officer knew that the pastor always signed the attendance forms in green ink with a "smiley face." The residential officer subsequently confirmed with the church that Defendant did not attend the service and the pastor had not signed the attendance form. When confronted, Defendant claimed that she attended the church service, and that an usher had given her a signed attendance form. Defendant now

admits, however, that she was outside the church talking with her daughter during that time. As a consequence, Defendant was given four days of room restriction.

On February 10, 2012, Defendant signed out of the facility at 9:35 a.m. to work at McDonald's, with a return time of 7:30 p.m. At 4:00 p.m., the halfway house received a phone call from McDonald's, stating that Defendant had failed to report to work that day. When Defendant failed to return to the halfway house at 7:30 p.m., she was placed on escape status. Defendant's whereabouts were unknown until she was arrested in Chicago on March 6, 2012.

At the instant hearing, Defendant testified that she had received a phone call from her daughter at 6:30 a.m. on February 10. According to Defendant, her daughter reported that her "liver enzymes were high" and she was at the hospital. Defendant admits that when she left the halfway house at 7:30 a.m., she did not intend to report to work, but rather went to Allen Hospital.[1] According to Defendant, her daughter had surgery at 11:00 a.m. At approximately 12:00 p.m., Defendant received a text from a co-worker, indicating that two African-American men were looking for her. Defendant returned the call at about 12:30 p.m. and, from the descriptions provided by the co-worker, believed that the men were Daniel Judon and Titus Judon. Defendant advised the Court that she had testified against the Judons' cousin and she believed that they intended to do her harm.[2]

Defendant testified that "I panicked." Defendant called DeShawn Gilmore, who picked Defendant up at the hospital and delivered her to the bus station. Gilmore purchased a bus ticket for Defendant and she left for Chicago. Defendant testified that she had not planned on leaving, as evidenced by the fact that she had turned in her paycheck the prior day and did not have any money.

---

[1] Defendant claims that she left the halfway house at 7:30 a.m., while the report indicates that she signed out at 9:35 a.m.

[2] According to Defendant's counsel, Defendant was assaulted while cooperating with the Government on pretrial release.

3

Defendant was not arrested until March 6, 2012. According to police reports, the arresting officers responded to a call of a domestic disturbance. The Defendant, "who fit the physical description given by the caller, was leaving the residence of the domestic disturbance on foot." Defendant told the officers her name and a records check "revealed" an active warrant issued in this case. Defendant claims that she told her sister-in-law to call the Chicago Police Department so "I could turn myself in." According to Defendant, she walked outside so that her children would not see her arrested. Following her arrest, the United States Pretrial Services Office in Chicago sought a drug test, which Defendant "declined per attorney."

## *II. DISCUSSION*

Because Defendant refused to submit to a drug test, which is required as a condition of her supervised release, the mandatory revocation provisions set forth in 18 U.S.C. § 3583(g) apply. All of the violations are "Grade C" violations, with the guideline range of imprisonment 5-11 months, pursuant to § 7B1.4(a). The maximum term of imprisonment is five years. The probation office recommends Defendant be sentenced to serve 11 months in prison. The Government asks that Defendant be ordered to serve two years. Defendant suggests that a five-month term of imprisonment is appropriate.

Defendant was on supervised release for just over three months when she absconded. During that time, Defendant used a controlled substance and repeatedly violated the rules at the residential reentry center. In each instance, Defendant has attempted to minimize her culpability. She admits she took "a pill," but claims she did not know it contained methamphetamine. She signed out of the halfway house to seek medical attention, but subsequently left the hospital without having received treatment and with no record of her having appeared. She falsely claimed that she had attended church, but now admits that she was instead meeting with her daughter. On February 10, she signed out to go to work, which she knew at the time was a lie.

Defendant claims that she spoke with a co-worker on February 10 and was convinced that the Judon brothers were looking for her. According to Defendant, she

4

"panicked" and took a bus to Chicago. During the next four weeks, Defendant never attempted to report her concerns to her probation officer, the United States Attorneys Office, the United States Marshals Service, or the Chicago Police Department. While Defendant now claims that she orchestrated her "surrender" on March 6, there is nothing in the records to reflect that. Defendant could have simply walked in to the nearest police station. Instead, police responded to a domestic disturbance, confronted Defendant, and a records check revealed the outstanding warrant.

Defendant is not a credible witness. Her explanations for the various violations make little sense. Not later than two days after being released from prison, Defendant admits taking "a pill" which contained methamphetamine. On multiple occasions, Defendant lied to the halfway house regarding her activities. On February 10 – the day she absconded – Defendant lied regarding her destination when she signed out of the halfway house. If Defendant is to be believed, she received a phone call shortly after her daughter's surgery, which suggested to Defendant that the Judon brothers were looking for her. Defendant "panicked" and fled to Chicago. Presumably, however, Defendant had time to reflect over the next four weeks and yet never contacted authorities regarding her concerns or her whereabouts.

According to her Presentence Investigation Report (docket number 295-1), Defendant's prior record includes nine convictions for theft, as well as assault, giving false information to a law enforcement officer, trespass, criminal mischief, and forgery. To Defendant's credit, after receiving a substance abuse evaluation on November 28, 2011, Defendant completed an outpatient substance abuse treatment program at Pathways Behavioral Services in Waterloo on February 8, 2012. Defendant also completed a mental health evaluation, but no further treatment was recommended.

Revocation of Defendant's supervised release is mandatory and appropriate. The fighting issue is the length of time Defendant should be imprisoned. I believe the violations in this case are serious. Defendant used a controlled substance almost immediately after being released from prison. Approximately three months later, she

5

absconded to Chicago and her whereabouts were unknown for approximately one month. Defendant declined to provide a urine sample following her arrest. While Defendant attempts to present mitigating circumstances, her credibility is suspect. After considering all of the circumstances, I believe Defendant should be imprisoned for a period of 18 months.

### III. RECOMMENDATION

For the reasons set forth above, it is respectfully **RECOMMENDED** that Defendant's supervised release be revoked and that she be sentenced to serve an 18-month term of imprisonment. It is further **RECOMMENDED** that following her release from prison, Defendant be placed on supervised release with a condition of her supervised release to include placement at a residential reentry center. Supervised release should continue until the originally-scheduled end date.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on April 4, 2012.*

DATED this 5th day of April, 2012.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA